OPINION AND JOURNAL ENTRY
{¶ 1} Non-party/appellant KPMG, LLP ("KPMG") appeals from the trial court's order that granted defendant-appellee Victor Moore's ("Moore") motion to compel discovery. For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings.
 {¶ 2} The underlying lawsuit involves plaintiff Century Business Services, Inc.'s ["CBSI"] purchase of Moore's business in 1998 and Moore's alleged non-competition, non-solicitation and confidentiality obligations relating to same. It is alleged in the verified complaint that Moore, an accountant, provided litigation consulting and expert witness services on behalf of one of CBSI's wholly owned subsidiaries. It is alleged that Moore has served as an expert witness in litigation against KPMG.
 {¶ 3} While CBSI alleged that Moore breached his aforementioned obligations, Moore counterclaimed that CBSI fraudulently misrepresented its financial condition to him. In particular, Moore maintained that CBSI inflated the price of its stock by manipulating its goodwill amortization.[1]
 {¶ 4} It is undisputed that KPMG performed audits of CBSI at times relevant to the underlying action. On July 18, 2002, Moore served a subpoena duces tecum on KPMG seeking documents relative to KPMG's audits of CBSI for the period between "January 1, 1998 to the present." The subpoena essentially focused upon documents pertaining to goodwill amortization (R. 27, Exh. 1, ¶¶ 1-5), documents relating to CBSI and the Securities Exchange Commission (Id. ¶¶ 6-7); and documents related to the cash flow of CBSI's subsidiaries (Id. ¶¶ 8-9). In correspondence dated July 31, 2002, KPMG objected to Moore's subpoena on a myriad of grounds including that the subpoena "may call for the production of documents that are confidential and propriety to KPMG, including * * * trade secrets concerning KPMG's methodology for designating, performing and documenting its services." (R. 27, Exh. 2, ¶ 5, emphasis added).
 {¶ 5} On August 1, 2002, Moore's counsel sent correspondence to KPMG's counsel enclosing various pleadings and indicating that Moore would consider a protective order if proposed by KPMG. (R. 27, Exh. 3). Over two months later, Moore's counsel sent correspondence to KPMG's counsel seeking its responses to the July subpoena and alternatively notifying KPMG of its intent to seek a motion to compel from the court by October 15, 2002. On October 11, 2002, KPMG's counsel requested Moore's counsel to extend the October 15 deadline to October 22, 2002.
 {¶ 6} On October 16, 2002, Moore filed a motion to compel response to subpoena. KPMG combined its response to Moore's motion to compel with its own motion to quash the subpoena or, alternatively, for a protective order. On December 19, 2002, the court granted Moore's motion to compel KPMG's response to the subpoena. Although there was a settlement conference on that same day, KPMG, a non-party, did not participate. KPMG has appealed pursuant to R.C. 2505.02(B)(4) from the trial court's order that granted Moore's motion to compel. We will address KPMG's assignments of error together as they are interelated.
 {¶ 7} "I. Moore has not demonstrated a substantial need for discovery from KPMG that cannot be otherwise met through discovery from CBSI.
 {¶ 8} "II. Moore cannot show a substantial need to discover KPMG'S trade secrets."
 {¶ 9} It is well settled that the trial court enjoys considerable discretion in the regulation of discovery. Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 668. We review a trial court's ruling on discovery under the abuse of discretion standard.Majestic Steel Service, Inc. v. Disabato (Dec. 16, 1999), Cuyahoga App. No. 76521.
 {¶ 10} KPMG contends that the trial court abused its discretion by compelling it to respond to Moore's subpoena and by not granting its corresponding motion to quash the subpoena or, alternatively, for a protective order. KPMG's argument is twofold: (1) that Moore's subpoena is unduly burdensome contrary to the provisions of Civ.R. 45(C) because Moore had not exhausted discovery efforts against CBSI first; and (2) that some of the requested information contains trade secret information. Moore responds that the subpoena is narrowly tailored to obtain information that is relevant to his claims. Moore further contends that the subpoena does not impose an undue burden on KPMG and that KPMG has failed to establish any protectible trade secret under R.C. 1331.61.
 {¶ 11} There is no apparent dispute that the subpoena in question seeks information relevant to the underlying litigation. KPMG, a certified public accounting firm, audited CBSI, a publicly traded company, at times relevant to this case. Defendant Moore's claims involve allegations of securities fraud with regard to the goodwill amoritization of CBSI. The subpoena is tailored accordingly. Thus, the trial court did not abuse its discretion in compelling KPMG to respond to the subpoena on the alleged basis of undue hardship.
 {¶ 12} KPMG further alleges that Moore has failed to establish a substantial need for the subpoenaed documents. Moore indicated that the subpoena was aimed towards obtaining a complete and accurate set of documents. At oral argument, Moore represented that it had served parallel discovery to CBSI. While Moore has received some responsive documents, Moore questions the completeness of the response. Indeed, KPMG admits that it is in sole possession of any responsive documents that it alleges contain "trade secret" information. Thus, we find that Moore has established a substantial need for the subpoenaed documents. See generally, Peat, Marwick, Mitchell Co. v. Creditor's Committee ofNortheast Dairy Cooperative Federation, Inc. (N.Y. Dist. 1986),65 B.R. 886, 887 (nonparty accountant's workpapers that contained financial information regarding company was the proper subject for discovery).[2]
 {¶ 13} KPMG asserts, in the alternative, that the court erred in compelling disclosure of trade secret information to its alleged competitor without restriction. Indeed, this Court has held that it is an abuse of discretion for a court to compel the production of trade secret information without imposing any restrictions on the use of the trade secrets. Id.
 {¶ 14} The Ohio Revised Code defines "trade secret" in R.C. 1331.61(D).[3] In this case, KPMG submitted the affidavit of its Senior Manager that provides in relevant part as follows:
 {¶ 15} "4. KPMG considers certain aspects of its auditing workpapers to be proprietary and to contain trade secrets of KPMG. KPMG's workpapers reflect KPMG's auditing methods and techniques. Disclosure of this information to third parties would substantially harm KPMG economically, in that KPMG's auditing methods and techniques have economic value to KPMG which would be diminished if competitors were able to obtain and copy them. Preserving the confidentiality of this information is essential to permit KPMG to maintain its competitive edge over its competitors. KPMG did provide directly to CBSI its actual independent auditor's reports.
 {¶ 16} "5. KPMG maintains auditing workpapers in strict confidence. In fact, KPMG limits its audit clients' access to workpapers, and limits access to those documents within KPMG to those who have a need for them in the course of KPMG's provision of services." (R. 30, Exh. D).
 {¶ 17} This affidavit, however, consists solely of conclusory statements of KPMG's opinion. It is impossible to discern from this affidavit which, if any, of the unproduced documents actually contain "trade secrets" as that term is defined by law. However, it is an abuse of discretion to order the production of trade secret information without restriction. Majestic Steel, supra.
 {¶ 18} Accordingly, Assignment of Error I is overruled. Assignment of Error II is sustained in part. The order to compel is affirmed, and KPMG must produce all responsive documents except those it contends contain "trade secret" information. The order to compel is reversed to the extent that the trial court must first ascertain the validity of any alleged trade secret before ordering production of same without restriction. On remand, the court is instructed to conduct an in-camera inspection of the documents allegedly containing KPMG's "trade secret" information. The court shall impose adequate restrictions on the use of documents containing "trade secret" information, if any.
Judgment affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion.
FRANK D. CELEBREZZE, JR., P.J., and DIANE KARPINSKI, J., CONCUR.
[1] CBSI paid for Moore's company with cash and restricted shares of its stock.
[2] KPMG relies heavily on Martin v. Budd (1998), 128 Ohio App.3d 115
in support of its position that Moore has not established a substantial need. The facts pivotal of the court's determination in Martin are not present in this case. The Summit County Appellate Court in Martin found that the plaintiff in a products liability case against Goodrich tire manufacturer failed to establish a substantial need to obtain proprietary information from a non-party tire manufacturing competitor of Goodrich regarding one of that manufacturer's tire designs. The court reasoned that the plaintiff "did not demonstrate that they could not obtain expert testimony regarding the commercial feasibility of the single strand tire design * * * from some other source." Id. at 120. In this case, there is no dispute that Moore cannot obtain all of the information relative to KPMG's audit of CBSI from some other source.
[3] {¶ a} R.C. 1331.61(D) defines trade secret as: "information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
{¶ b} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain ecomonic value from its disclosure or use.
{¶ c} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."